Good morning, Your Honor. Sung Park on behalf of the appellant. No one disputes in this case that a constitutional error has been made by the trial court. The issue is whether the defendant is guilty of the crime. Well, I'm not so sure about that. I mean, there was a defective instruction, but I see the Court of Appeals in California and the other side saying the jury was told that the jury was told they could only convict the defendant if he had a clear deliberate intent to kill, which was the result of premeditation and deliberation. That's correct. However, the aiding and abetting instruction was also given. I know, but it says that if you find that the killing was preceded and accompanied by a clear deliberate intent on the part of the defendant, if it said the perpetrator, that might be one thing, but it says the defendant. Why isn't that a dispositive in this habeas case? The Court of Appeals said the jury was told they couldn't convict the defendant unless he had this intent, and that's what was left out of the aiding and obstruction thing. But here it is in another part of the instructions. However, you – the Court gave the instruction, however, the jury was given the demon-errored instruction, which stated that the jury did not have to find the intent. It didn't – no, it didn't say you don't have to find any intent. Well, that's part of it was left out. Right. And here it's added. And the Court of Appeals pointed to this and said when you get to the bottom line, the jury was told that the defendant had to have been demonstrated to have the intent to kill. However, if we look at the findings, that the use of the gun allegation was found not true. Whatever that means. Right. Right. And this Court has stated that it's conceivable that the jury found under the aiding and abetting, as well as the direct perpetrator of the offense. However, because the aiding and abetting instruction, which omitted the intent element, was given, it is possible that the jurors relied on the aiding and abetting instruction to find him as the perpetrator of the offense. Without finding the use of the gun allegation. And that raises the problem because it is conceivable that the jurors used the aiding and abetting instruction. We are not sure. And the question is can we conclude. If they used the aiding and abetting instructions, how would they get to first degree murder? If the jurors conclude that the, my client, Petitioner, aided and abetted someone else in committing the first degree murder. However, without the intent element being instructed, the jurors would have found that Petitioner aided and abetted someone else in committing the murder without the specific intent of wanting to commit the murder or of encouraging the committing of the murder. And that raises the problem in this case because given the evidence, which is not overwhelming, the court of appeals stated that the evidence was compelling of his intent.  However, it only refers to the fact that Petitioner was present at the scene of the killing. And refers to the fact that one of the witnesses overheard. Van Diver said he heard him discussing, your client discussing the shooting as retribution for Robinson's assault on Coleman's girlfriend. Well. It's not only presence, it's he's talking about it. Right.  Linda Tolliver said when she asked him about it, he said he regretted it. Right. However, it doesn't really specifically state what role he partook in the shooting. The suggestion that three men could have beaten him and he laughed. Right. Still, those evidence, those facts do not point to what Petitioner's intent was. To what degree are we bound by the California Court of Appeals decision that this evidence is compelling and dispositive and destroys his position that he was just a bystander? Are we bound by that somehow? Well, I believe this court has to look at the conclusion made by the court of appeals and determine whether that was an unreasonable determination of the facts. And given the facts of this case, we submit that it is unreasonable determination of the facts because What facts counter the finding by the court of appeal in your view? Well, our view is that simply referring to his presence at the scene of the shooting is not enough to show his intent to commit the murder. But in light of the facts that Judge Trott read, what facts do you have to counter that to support the finding of the court of appeal? Well, he was there as the facts show, but mere presence is not indicative of his intent to commit the crime. But these facts are more than mere presence. That's what Judge Trott was reciting to you, the other facts. What do you have that would counter that and show that the court of appeal determination was unreasonable in light of those facts? Well, Petitioner had maintained that he was there as a witness. See, you have no other facts. You just simply have an interpretation of the facts. However, given the facts of this case, we don't have a determinative evidence to show. You don't have to. You say this is this is reasonable. Another interpretation may be reasonable also. Your interpretation may be reasonable also. But the court of appeals accepted this determination. And this isn't necessarily unreasonable. This is another reasonable interpretation of the evidence. However, the facts don't. The jury certainly seemed to think so. However, the facts don't support the conclusion because he was present. That's one fact. The other fact that the court of appeals refers to is the witness overhearing them discussing the shooting, but it doesn't give any detail as to who said what and what role Petitioner took in the shooting. As far as Ms. Tolliver asking him, couldn't you have done something else, he laughed. Could that support an inference that he was involved, though? The court of appeals could have reasonably inferred that his laughter indicated he was involved. Well, that's a good inference. However, that doesn't show his specific intent to kill the victim in this matter. There's no other finding made by the jury to indicate that he had specific intent. But don't you have to look at the totality of the circumstances? It seems to me what you're saying is you take each one up individually and say, and this wasn't enough, and that wasn't enough, and the third standing alone wasn't enough, but you've got to look at all of them to see whether the totality was enough to justify the conclusion of the State court of appeals. Right. I guess the question is, given the evidence that was presented at trial, could the jury necessarily have found the specific intent which was omitted in the instruction? That's the question. Whether the chief ---- But didn't the California court of appeals say that the way the case developed, it was clear to the jury that they had to find intent before they could convict him? I'm not so sure about that, because conflicting instructions were given. No, but didn't they say that? You may disagree with that, but didn't they say it? Didn't they indicate that that's how they viewed the instruction in the circumstances? In this case, Your Honor, I don't think so, because, again, the conflicting instructions are given, and we're not certain whether the Petitioner was convicted as an aidant and a better or a direct perpetrator, because specifically the use of the gun allegation was found not to be true. So he did not fire the shot. According to the jury, that's ---- they could not determine whether he fired the shot or not. Counsel, do you want to keep a minute for rebuttal? Okay, Your Honor. All right, we'll hear from the other side. Good morning. May it please the Court. Deputy Attorney General Margaret Maswell on behalf of Respondent Worden. As this Court has noted, here on Federal habeas review, it's not enough to show that the State court in adjudicating this claim on the merits was either incorrect or erroneous in its decision, but that its application of Federal law was unreasonable. Here we have the California court of appeal concluding that there was instructional error under State law and applying the Chapman harmless error analysis to that error and concluding that the error was harmless. As the court of appeal noted, the first-degree murder instruction specifically used the word defendant rather than perpetrator, and the word perpetrator appears throughout the aiding and abetting instructions. So there is a distinction there between the two, which the jury, I think, would have made note of. Even if we could make some kind of assumption that the jury initially looked at this defendant as an aider and abetter to go through the process, we have to look at what was really missing from the instruction. And what the jury was ---- I think what helps in assessing what was missing is to look at what they were told. And they were told that they had to find that the Petitioner had knowledge of the perpetrator's unlawful purpose, that the Petitioner actually aided, promoted, encouraged, or facilitated the commission of the murder, and then they were finally told that mere presence at the scene of a crime which does not itself assist in the commission of the crime does not amount to aiding and abetting. So the jury essentially made a finding that would defeat Petitioner's argument here, that Petitioner was just present and had nothing to do with the crime itself. As Judge Trott noted, the evidence, there was evidence that Petitioner was actually a direct perpetrator of the crime, apart from the fact that there is not true finding on the personal gun use allegation. The not true finding is not a finding by the jury that the Petitioner did not use a firearm. It was simply a finding that the burden of proof wasn't met as to that allegation. And frankly, if you look at the evidence of conduct and intent of the three perpetrators here, it's virtually indistinguishable. You have three perpetrators escorting the victim to a baseball diamond where they not only murder him in execution style, but in execution with prejudice, they shoot him more than 13 times and leave him in a public place to be found the next day. The bullets that are used come from three, at least three different weapons, and they're three men conveniently on the field. The next day, the Petitioner and his cohorts discuss the murder. They indicate that it was revenge because the victim mugged one of the co-defendant's girlfriends. He then does indicate further consciousness of guilt by later stating he regretted the killing when he's confronted by the owner of the apartment. And then, yes, laughs when, you know, she has the audacity to suggest that a lesser the California Court of Appeals decision that the absence of a specific one line that would say in aiding and abetting, he had to, you know, specifically intend to facilitate the crime. They're finding that that's harmless. It's not unreasonable. And this Court should affirm the district court's decision in the matter. Thank you. Roberts. Do you have a minute to respond? Again, the Petitioner would urge that because of the not true finding, we're not certain under what theory the jury found Petitioner guilty of first degree murder. And as this Court has stated in Roy v. Gomez, that when we are not certain or we can't conclude under what theory the jury found Petitioner guilty of first degree murder, then we are in grave doubt. What Supreme Court case are you relying upon to support your argument that habeas relief is warranted? Well, first of all, there are Supreme Court cases stating that every element has to be proven beyond reasonable doubt. That's the underlying Supreme Court decision. What about the harmless error? The harmless error is the Roy v. California. The Supreme Court has stated that demon error requires an harmless error discussion analysis. And in, again, I cited the case that where the U.S. Supreme Court stated that mere presence at the scene of the crime does not show that he committed the crime. Anderson, your argument. All right. Thank you, Counsel. The case has already been submitted. And we'll move on to United States v. Fragoso.
judges: Friedman , Trott, Rawlinson